**SWANEY v PENNSYLVANIA RD CO et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1417. Decided June 28, 1937

W. S. Rhotehamel, Dayton, and Swaney & Creager, Dayton, for plaintiff-appellee.

Matthews & Matthews, Dayton, for defendant-appellant.

## OPINION

By GEIGER, J.

Plaintiff as the administrator of Harry Brannum, deceased, filed his petition in the Court of Common Pleas of Montgomery County seeking to recover against the defendant for the wrongful death of his decedent. After stating the corporate existence of the several defendants he alleges that the defendant, The Pennsylvania Railroad was operating a train upon the west bound track where the same intersects Germantown Street, which intersection is within the district specified as the "inner district" by §1794 of the Ordinances of the City of Dayton, which provides that within said district trains shall not be operated at a speed in excess of 15 miles per hour. It is alleged that on the 24th of May 1935 at about 12:30 in the morning the plaintiff's decedent was operating a Ford Coupe in an easterly direction on Germantown Street and was proceeding to cross the track of defendant and while so crossing was struck and killed by a west bound passenger train of the defendant and that said death was a result of the negligence of the company in the particulars set out in the petition, which in substance are as follows: that the company was operating its train at a speed greater than 15 miles per hour in violation of certain sections of the Ordinance which speed is alleged to have been not less than 35 miles per hour and further that it was operated without control and around a pronounced curve by reason of which, under most favorable conditions, the approach of a west bound train could be seen only a short distance; that with knowledge of the curves the company had erected and maintained certain buildings which obstructed the view of the persons approaching the crossing; that the defendant had a string of freight cars immediately adjacent to said crossing, the effect of which was to obstruct the view of persons operating automobiles on Germantown Street approaching said crossing from the west; that the defendant was negligent in that after striking the plaintiff's decedent, said train continued to drag the automobile a very considerable distance after said train had struck him, causing his death; that the defendant did not have a watchman at the crossing and that in spite of the curves, watchman's shanty and string of freight cars obstructing the view of those using said crossing, did not have in operation any warning device of any kind designed to attract the sense of sight or hearing to apprise travelers of the dangers. Certain paragraphs of this petition were, on motion, stricken and the plaintiff filed an amended petition not differing from the original in matters with which we are now concerned. The defendant answered admitting the Ordinance and that the decedent's automobile collided with the train at the Germantown Street crossing. Defendant denies all other allegations.

The case was tried and after the introduction of the plaintiff's evidence a motion was interposed for an instructed verdict which motion was, by the court, overruled. Thereupon the defendant introduced its testimony and again interposed a motion for an instructed verdict, which was overruled. Thereupon the cause was submitted to the jury which, after deliberation, failed to agree. Defendant appealed to this court from the judgment of the court below refusing to instruct a verdict in its behalf.

Plaintiff, appellee, filed a motion in this court to dismiss the appeal on the ground that inasmuch as there had been no verdict by the jury that there was no "final order" from which appeal might be taken to this court.

This court overruled said motion to dismiss and the case is now considered upon the alleged error of the court below in refusing an instructed verdict. The defendant claims that the Ordinances establishing a maximum rate of 15 miles per hour within the "inner district" are invalid in that they do not comply with authority granted the municipality to pass Ordinances controlling railroad traffic. We do not agree

with this contention of the defendant and are of the opinion that the Ordinances are valid and that inasmuch as the intersection was within the limits of the "inner district" as provided by the Ordinance that the speed of the train was limited to not more than 15 miles per hour.

Upon the point as to the speed at which the train was operated as well as upon whether or not it was within control of the engineer there is a conflict of testimony which required that upon that point the cause be submitted to the jury. If the railroad company was violating the Ordinance in the operation of its train it was negligence per se and if such operation was the sole proximate cause of the death of the decedent, the defendant would be liable.

This leaves for our consideration the question as to whether or not the plaintiff by its own act, contributed to the accident. We might set out at length the duty of a traveler upon the highway when he approaches a railroad crossing. The trial court incorporated in its charge the following as to the duty of the traveler upon the highway.

"The court charges the jury that it was the plaintiff's decedent's duty just prior to and at the time of the accident, to exercise ordinary and reasonable care to discover an approaching train and continue to do so until he was over the crossing and the danger was past. It was the duty of the plaintiff's decedent in approaching and going upon the crossing where it is alleged this accident took place to use and exercise ordinary care to discover whether or not a train was approaching before going on the crossing, and by ordinary care the court means the care which an ordinary prudent person would exercise under all circumstances of the particular case. This would mean that the greater the apparent difficulty in ascertaining whether a train were approaching the greater the care to be exercised would be required.

"The duty of a person to look and listen before crossing railroad tracks includes the duty to do so at a point which will make listening and looking reasonably effective. If there is a permanent obstruction to the view that will make approaching danger invisible, or a curve in the track or a transient noise that will make approaching danger inaudible, it is negligence in one to go forward at once from a place of safety to a possible danger, without ascertaining the true facts.

"In other words, before crossing the tracks, the plaintiff's decedent was required to look and listen and to exercise ordinary care under all the facts of the instant case.

"A failure to do so on his part would be negligence which would prevent the plaintiff from recovering in this case."

The decedent and the woman with whom he was riding in his automobile both being dead, resort must be had to other evidence as to what transpired. Probably the most important witness to the accident was Harry Strasburg, whose evidence will be found on page 12 et seq. of the bill of exceptions. He was a watchman at an adjacent factory building and at about the time of the accident went to the door of his room to observe the approach of the train which was then due. He did not hear anything and just as he sat down he heard the bell that is, the crossing bell and then he heard the engineer blow the danger signal. He stepped outside the door and in 15 or 20 seconds the pilot of the engine passed the south corner of the boiler room which is 30 or 35 feet from the intersection. He then saw the automobile approaching on Germantown Street at about 30 feet from the track. He did not see the collision but heard the crash. The automobile was proceeding, in his judgment, eastwardly at between 30 and 35 miles per hour and the train was proceeding northwestwardly at about 17 miles per hour. He then testifies as to certain distances where the automobile was found after being struck by the train. He heard the emergency brakes applied and saw the shining headlights which illuminated the automobile for an instant. There were two people in the automobile. The man was driving the car and looking to the right of him at the woman, who was looking straight ahead. The driver was not looking toward the railroad crossing and at the time he observed this situation the automobile was 30 or 35 feet away from the westbound track; that in his judgment there was nothing to obstruct the view of the train if the driver had looked. Other witnesses detail certain circumstances in connection with the situation after the car was struck. The defendant's witnesses testify at some length as to the situation of the track in reference to the crossing and of the various buildings and side tracks adjacent to the railroad. The company introduced a plat

which shows in detail the surroundings; also several photographs. These clearly show that the driver had a clear view of the approaching train in time to stop, had he been exercising due care. Neither the curve, the structures near the track nor the cars on the siding prevented him seeing the train. The headlight was burning, the crossing bell ringing and the whistle was blowing, all the warnings that were required to notify the driver of the approach of the train. The automobile was moving faster toward the crossing than the train. It might well be possible that the driver attempted to "beat" the train, but failed. One can not read the testimony in this case without arriving at the conclusion that the decedent was not exercising the care in approaching the crossing which was known to him, that was required of him by law. It is not necessary to detail the various cases in Ohio imposing a duty upon the traveler over the highway approaching a railroad crossing. We note the following cases but refrain from commenting.

Pennsylvania R. R. Co. v Rusynik, 117 Oh St 530.

C. D. & M. Elec. Co. v O'Day, 123 Oh St 639.

Pennsylvania R. R. Co. v Moses, 125 Oh St 621.

C. C. C. & St. L. Ry. Co. v Lee, Admr., 111 Oh St 391.

Toledo Terminal R. R. Co. v Hughes, 115 Oh St 562.

C. C. C. & St. L. Ry. Co. v Elliott, 28 Oh St 341.

Railroad Co. v Kistler, 66 Oh St 326.

R. R. Co. v Heck, 117 Oh St 530.

Buell, Admr. v R. R. Co., 114 Oh St 40.

B. & O. R. R. Co. v McClelland, 69 Oh St 142.

D. T. & I. R. R. Co. v Rohrs, 114 Oh St 492.

This court in the case of Pennsylvania R. R. Co., Plaintiff in Error v Haskins et, Defendants in Error, No. 1341, Montgomery County, in a decision rendered on the 30th day of January, 1936, (21 Abs 289) had occasion to review questions not dissimilar from those arising in this case and arrived at the conclusion that in that case the decedent had contributed to his own injuries and was not entitled to recover.

We are constrained to the opinion that the plaintiff's decedent, by his own negligent acts, contributed to his own injury and death and that the court below erred in not instructing the jury to return a verdict in favor of the defendant.

Judgment accordingly.

BARNES, PJ, and HORNBECK, J, concur.